DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JOHN POWERS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D17-1652

[November 28, 2018]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jeffrey R. Levenson, Judge; L.T. Case No. 13-7743-CF-10A.

Carey Haughwout, Public Defender, and Logan T. Mohs, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Rachael Kaiman, Assistant Attorney General, West Palm Beach, for appellee.

CONNER, J.

Appellant, John Powers, appeals his judgment and sentence entered below for DUI Manslaughter—Unlawful Blood-Alcohol Level ("UBAL"), raising several issues. The State concedes error as to all but two of the issues raised. Regarding the contested issues, we find merit as to Appellant's contention that the trial court erred by considering a scoresheet with improper points for prior record and reverse for a *de novo* resentencing. Our reversal renders the remaining issue not conceded by the State as moot.

*Background*

The information charged Appellant DUI Manslaughter in violation of sections 316.193(1)(a) and 316.193(3)(a)(b)(c)3.a, Florida Statutes, in Count 1 and DUI Manslaughter—UBAL in violation of sections 316.193(1)(b) and 316.193(3)(a)(b)(c)3.a, Florida Statutes, in Count 2. Both charges were in connection with a fatal crash.

Appellant entered an open guilty plea to both counts upon the State's agreement to drop one of the counts at sentencing because the counts were duplicate. At sentencing, the State dropped Count 1, and Appellant was adjudicated guilty of Count 2, DUI Manslaughter—UBAL. However, the judgment lists the offense as having been committed under both sections 316.193(1)(a) and 316.193(3)(a)(b)(c)3.a, Florida Statutes.

Appellant's sentencing scoresheet listed eleven prior offenses by year and county only, except for one case for which the case number was provided. All of the offenses were listed to have occurred in 1999 or earlier. Appellant's scoresheet stated a total of 9.4 points for prior record. Notably, the State did not enter any evidence of Appellant's prior record at the sentencing hearing.

The trial court sentenced Appellant to 132 months in prison, followed by two years of community control, followed by two years of probation. The trial court imposed a four-year minimum mandatory prison sentence. The order assessing charges, costs, and fees imposes a $400 cost for "public defender assistance (PD fee imposed)," although no such fee was orally pronounced as part of Appellant's sentence. The trial court orally pronounced that Appellant was ordered "to have a drug and alcohol evaluation and follow-up treatment as deemed appropriate," but did not orally state that Appellant was required to pay for the evaluation and treatment, nor did it specifically waive Appellant's obligation to pay for those services. Nevertheless, the trial court's written sentencing order requires Appellant to be "responsible for the payment of any costs incurred while receiving said evaluation and treatment, unless waived by court." The written sentencing order also requires Appellant to "maintain an hourly accounting of all [his] activities on a daily log" to submit to his probation officer upon request. Likewise, this condition was not mentioned during the trial court's oral pronouncement of Appellant's sentence.

Additionally, the written sentencing order reflects a clerical error on the third page, in which it indicates the sentence is for Count 1 (which was dropped), while the first two pages of the order correctly indicate the sentence is for Count 2.

After sentencing, Appellant gave notice of appeal. During the pendency of this appeal, Appellant filed two motions to correct sentencing errors pursuant to Florida Rule of Criminal Procedure 3.800(b)(2). The trial court did not rule on either motion within sixty days of their respective filings, which constitutes a denial of both under Florida Rule of Criminal Procedure 3.800(b)(2)(B).

2

*Appellate Analysis*

Appellant raises six issues on appeal, contending the trial court erred by: (1) considering a scoresheet that contained improper prior record points; (2) denying Appellant's motions to correct sentence asserting a lack of evidence to support the prior record for which scoresheet points were assessed; (3) imposing a $400 public defender fee; (4) imposing a payment requirement for special conditions of supervision without an oral pronouncement of the obligation at sentencing; (5) making a scrivener's error in the written judgment regarding the offense statute number; and (6) making a scrivener's error in the written judgment regarding the count of the sentence.

The State concedes error as to issues 3, 4, 5, and 6. As analyzed below, we find merit with Appellant's arguments regarding issue 1 (assessment of prior record points) and reverse as to that issue as well. Because we reverse on issue 1, issue 2 (proof of prior record) is moot.

*Improper Assessment of Prior Record Points*

The standard of review for a motion to correct sentencing error is *de novo*. *Willard v. State*, 22 So. 3d 864, 864 (Fla. 4th DCA 2009).

Appellant's scoresheet listed eleven offenses as part of his prior record, all occurring in 1999 or earlier. Appellant argues that the eleven offenses listed as part of his prior record should not have been scored due to their age.

Florida Rule of Criminal Procedure 3.704 excludes various offenses from consideration as it relates to an offender's prior record. Relevant here, rule 3.704(d)(14)(A) provides:

> Convictions for offenses committed more than 10 years before the date of the commission of the primary offense must not be scored as prior record if the offender has not been convicted of any other crime for a period of 10 consecutive years *from the most recent date of release from confinement, supervision, or other sanction, whichever is later, to the date of the commission of the primary offense.*

Fla. R. Crim. P. 3.704(d)(14)(A) (emphasis added). Notably, the rule provides that "[a]ny uncertainty in the scoring of the offender's prior record must be resolved in favor of the offender[.]" Fla. R. Crim. P. 3.704(d)(14)(D).

3

The parties agree that none of Appellant's listed prior offenses were committed within 10 years of the date of the commission of the primary offense in this case. The parties also agree that pursuant to rule 3.704(d)(14)(A), unless the above emphasized provision of the rule applied to one of his offenses, none of them should have been included. The point in contention in this appeal involves the parties' disagreement over the application of this provision to Appellant's 1999 grand theft conviction, for which he was sentenced to two years of probation beginning March 12, 1999. Appellant points out that this sanction was scheduled to end March 2001, which is more than 10 years before the June 12, 2011 date of the primary offense in this case—meaning that the saving provision would not have applied to this offense.

However, review of the case information record reflects that the probation for that charge did not end in March 2001, but rather was terminated on May 25, 2011—approximately three weeks before the primary offense in this case. The case information record also shows that an affidavit of violation of probation was filed on February 2, 2000, but that no action was taken until 2011, when the probation violation was withdrawn and probation was terminated on May 25, 2011. Based on the face of the record, therefore, it would appear that Appellant was under supervision within 10 years of the primary offense in this case, such that his prior offenses could be scored.

Appellant argues, however, that despite what the record says, it is legally incorrect. Appellant explains that although provisions exist today that can toll probation when a probationer violates the terms of his supervision, which could have allowed his probation to extend beyond its original two-year span and last until 2011, provisions are inapplicable to the 1999 grand theft case. Specifically, Appellant points out that section 948.06(1)(f), Florida Statutes, which provides for tolling of probation where a violation of probation is filed, was not made effective until July 1, 2001, which is four months *after* Appellant's probation had already expired in March 2001. 2001 Fla. Sess. Law Serv. Ch. 2001-109 (C.S.S.B. 888) (WEST). The State agrees that the tolling provisions of section 948.06(1) are inapplicable to the 1999 grand theft case. *Zaborowski v. State*, 126 So. 3d 405, 408 (Fla. 2d DCA 2013) (holding that the tolling provisions of section 948.06(1), which did not exist at the time of the probationer's violations, could not be retroactively applied where the probationary period had expired before the statute was enacted). Therefore, there appears to be no dispute that Appellant's probation *could not* have been tolled by the State's filing of its affidavit of violation of probation in 2000.

4

The parties also appear to agree that tolling did not exist at the time for anything other than absc*onsion*. *See Young v.* State, 739 So. 2d 1179, 1180 (Fla. 4th DCA 1999) (allowing for tolling during abscission). However, although the affidavit of violation of probation made no allegation of absconsion, the State suggests Appellant's probation could have still been tolled based on absconding—asserting that "it is unknown if there were ever any formal allegations of absconding in [Appellant's] 1999 grand theft case." In this regard, the State asserts that there is a factual dispute as to whether there are any facts in the 1999 grand theft case which would have tolled Appellant's probation. To this end, the State advises that it has no objection to this Court remanding the case to the trial court to "resolve the factual dispute of when probation terminated."

Although Appellant disagrees that there is a factual issue, he contends in the alternative that, should we determine this is a factual dispute, rule 3.704(d)(14)(D) requires resolution of such in his favor or by the trial court on remand. However, Appellant's primary argument is that the date on which his probation ended is a legal question, and that, with no tolling in effect, Appellant's probation ended in March 2001, and the trial court had no jurisdiction over Appellant after that date. *See Mobley v. State*, 197 So. 3d 572 (Fla. 4th DCA 2016) ("It is axiomatic that '[o]nce a term of probation has expired, a court lacks jurisdiction to entertain an application for revocation of probation based on a violation which occurred during the probation period unless, during the term of probation, appropriate steps were taken to revoke or modify probation.'" (alteration in original) (quoting *Shenfeld v. State*, 14 So. 3d 1021, 1023 (Fla. 4th DCA 2009))) . As such, Appellant argues that when the State finally purported to drop the probation violation on May 25, 2011, it did so in a court that had lost jurisdiction over ten years earlier. Additionally, Appellant emphasizes that he was never found to have violated his probation; rather the pending violation charge was "voluntarily withdrawn," such that even if tolling had been possible in a case this old, it would be unjust to allow the State to extend a defendant's probationary period for ten years effectively prolonging the relevance of a prior record which the rules clearly intend to exclude, and then to not even pursue the underlying violation.

We agree that although the State is correct that the record indicates the trial court did purport to terminate Appellant's probation in 2011, it did not have jurisdiction to do so because Appellant's probation had already been automatically terminated by virtue of it expiring in 2001. Furthermore, the record does not reflect that anything occurred before March 2001 to toll the original expiration date for probation. As Appellant points out, while the trial court may not have realized his probation ended in 2001, such does not change the fact that it was. *See id.* Furthermore,

the State concedes that the affidavit of probation in this record does not allege that Appellant absconded such as would allow his probation to be tolled, but merely suggests that there could possibly be other "unknown" documents that do allege abscension.  As such, the State does not even argue that evidence of abscension does exist, it only argues that evidence *may* exist.  However, the State has not referenced any authority that would allow it another opportunity to determine whether there is any other unknown evidence that could possibly exist, where the records it relied on below appear to be consistent with Appellant's claim that his probation expired in 2001 and that he was not on probation when his probation was eventually purportedly revoked.

Allowing the State another opportunity to determine whether any other unknown evidence of abscension exists and to introduce it at another hearing would give it a second bite at the apple.  Instead, where the parties acknowledge that the affidavit and record says what it does, a legal, not a factual, question remains: Whether the law, when applied to the affidavit of violation of probation, comports with what the records show.  There is no dispute that application of the law to the facts as shown by the record does not reflect any allegation of abscension by Appellant such that would have tolled his probation.  Therefore, as a matter of law, the 9.4 points for the prior offenses should not have been included on Appellant's scoresheet.

Because the record does not conclusively demonstrate that the trial court would have imposed the same sentence had a correct scoresheet been presented, we reverse Appellant's sentence and remand for a *de novo* resentencing.  *See State v. Anderson*, 905 So. 2d 111, 118 (Fla. 2005); *Naugle v. State*, 244 So. 3d 1127, 1128 (Fla. 4th DCA 2018) (explaining that when scoresheet errors are presented via (1) direct appeal, (2) Florida Rule of Criminal Procedure 3.800(b), or (3) Florida Rule of Criminal Procedure 3.850, then "any error is harmless if the record conclusively shows that the trial court *would have imposed* the same sentence using a corrected scoresheet" (quoting *Brooks v. State*, 969 So. 2d 238, 241 (Fla. 2007))).

*Conclusion*

Having determined that the trial court considered a scoresheet with improper prior record points at sentencing, we reverse the sentence imposed and remand for a *de novo* resentencing.  The State concedes the trial court made several other errors in the written sentence.  We trust the trial court will not commit the same errors upon resentencing.

*Reversed and remanded.*

TAYLOR and KUNTZ, JJ., concur.

*         *         *

**Not final until disposition of timely filed motion for rehearing.**